UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARIA ROSA,<br>    Plaintiff,<br><br>v.<br><br>MICHAEL ASTRUE, Commissioner,<br>Social Security Administration,<br>    Defendant. | )<br>)<br>)<br>)    Civil Action No. 09cv10645-NG<br>)<br>)<br>)<br>) |

GERTNER, D.J.:

## MEMORANDUM AND ORDER RE: MOTION
## FOR ORDER REVERSING THE DECISION OF THE COMMISSIONER
March 8, 2011

### I. INTRODUCTION

Claimant Maria Rosa ("Rosa") appeals the denial of her request for Social Security disability benefits by an Administrative Law Judge ("ALJ"). Rosa argues that the ALJ erred in two ways. First, she claims that the ALJ improperly disregarded the opinions of two of Rosa's treating physicians, and second, that the ALJ's credibility finding was not supported by substantial evidence. For those reasons, Rosa argues, there was no substantial evidence to support the ALJ's residual functional capacity ("RFC") assessment or the ALJ's final decision.

I agree with Rosa that the ALJ improperly disregarded the opinions of two of Rosa's treating physicians and remand on that ground. Because I find that the exclusion of this evidence violated 20 C.F.R. § 404.1527 and skewed the ALJ's interpretation of the record, I also find that the ALJ's analysis supporting his RFC assessment and final decision was flawed.

For the reasons described below, the ALJ's decision denying Rosa's claim is **REVERSED** and this case is **REMANDED** for further proceedings in accordance with this decision. To that end, I **GRANT** Plaintiff's Motion for Order Reversing the Decision of the Commissioner (document 20).

## II. FACTUAL BACKGROUND

### A. Rosa's Pain Allegations and Background

Rosa is a 62-year-old woman who pursued her disability claim based on the cumulative effects of her many physical and mental impairments; conditions that have worsened over time. Rosa's physical ailments include diabetes; high cholesterol; lower extremity edema and pain; rotator cuff tendinitis; and osteoarthritis in her wrists, spine, hips, and sacroiliac joints. Administrative Record ("A.R.") at 188. She takes Lipitor and IC Metformin to control her cholesterol and diabetes. Id. at 149.

Rosa says that her conditions now cause severe pain, limit her ability to undertake daily tasks, make her shaky and dizzy, and prevent her from standing for any length of time. Id. at 145, 182. She reports being able to lift only five pounds, being unable to squat or reach because of dizziness, and losing her breath when climbing. Id. at 157. Rosa needs to rest twenty minutes after walking a "couple of minutes." Id. at 157. Wearing shoes causes her severe pain. Id. at 182. She says that she needs to rest in the mornings after eating breakfast and washing up but "tr[ies] to do some light housework" afterward. Id. at 152. She cannot do heavy housework due to weakness and dizziness. Id. at 154. She prepares frozen meals for herself, or her daughter cooks for her because meal preparation makes her very dizzy and tired. Id. at 154. She goes grocery shopping once a month with her daughter. Id. at 155. Because Rosa cannot spend considerable time on her feet, she had to stop going to church, which she used to do weekly. Id. at 157. Instead, she watches television daily, sews once a month, socializes with friends over the telephone and visits with her daughter. Id. at 156-57.

Rosa also suffers from depression and anxiety. Id. at 188. She takes Citatalopram,[1] Celexa, and Lorazepam for "nerves." Id. at 149. While she has suffered from depression for a long time, Rosa reports that her depression and anxiety worsened in May 2007, after she stopped working. Id. at 164. Rosa's agitation sometimes causes her to shake uncontrollably. Id. at 182.

Rosa has a third-grade education. Id. at 150. From 1974 to 2006, Rosa worked in sewing factories as a sewing machine operator, pillow stuffer, trimmer, and folder. Id. at 170-77. She stopped working on July 26, 2006, when the company for which she worked closed. Id. at 145. Although she worked until the factory closed, Rosa states that her medical conditions began to severely interfere with her work in 2004. Id. at 17. In December 2006, Rosa began receiving monthly unemployment benefits. Id. at 109.

### B. Medical Records and Opinions

#### 1. Rosa's Doctors

Rosa submitted reports and treatment records from many doctors, including her rheumatologist, Dr. Ronald Rapoport ("Rapoport"); her primary care physician, Dr. Manuela Mendes ("Mendes"); and multiple other treating physicians. The Social Security Administration ("SSA") also obtained physical residual functional capacity assessments from Dr. Beth Schaff ("Schaff"), and Dr. R. Titanji ("Titanji"), both of whom reviewed the evidence in the record for Disability Determination Services ("DDS") but did not examine Rosa. Id. at 263-70, 299.

---

[1] The record lists atalopram as one of her medications, but I assume the text was cut and Citatalopram was the intended medication.

Rosa also provided numerous medical records to the SSA from Dr. Rapoport and Dr. Mendes.[2] Rosa's rheumatologist Dr. Rapoport first examined Rosa on April 17, 2008. Id. at 322. His notes from this examination indicate that Rosa's pain had *intensified over the last two years*, that her cervical spine had a generalized decreased range of motion, that Rosa's hands went numb at times, that there was "puffiness over" her hands, that there was decreased external rotation of her left hip, and that she suffered from discomfort in her lateral knee. Id. Although Dr. Rapoport noted that Rosa's shoulders "moved surprisingly well," he qualified that statement by emphasizing that Rosa nonetheless had pain in her shoulder. Id. Rapoport also ordered and reviewed x-rays of her cervical spine, wrists, and pelvis, and sent her for physical therapy. As the radiological report that Dr. Rapoport ordered explains, the x-rays conduced on April 19, 2008, showed moderate *degenerative* changes in Rosa's lower spine and moderate disc space narrowing. Id. at 323-25 (emphasis added). Based on his evaluation of Rosa and the subsequent x-rays, Rapoport filled out an SSA questionnaire on May 20, 2010,[3] that included his synopses of Rosa's ability to do work-related activities and Rosa's pain level. Id. at 332-34. In addition to indicating that Rosa could never carry anything over twenty pounds and could only occasionally carry twenty-pound objects, Dr. Rapoport declared that Rosa suffered from "significant pain" caused by osteoarthritis and rotator cuff tendinitis. Id. at 334. These conditions, he went on to explain, had been confirmed by the x-rays and he found her pain was of "such severity as to preclude sustained concentration and productivity which would be needed for full time employment on an ongoing sustained basis." Id.

---

[2] ALJ Resnick explicitly rejected the medical opinions of Dr. Rapoport and Dr. Mendes. This will be discussed in detail later.

[3] This was submitted in conjunction with Rosa's hearing before the ALJ.

Rosa also submitted reports from Dr. Mendes, whom she began seeing a few weeks before her hearing because she wanted a Portuguese-speaking doctor. Id. 22. Prior to seeing Dr. Mendes, she had apparently never had a doctor with whom she could speak in her primary language. Dr. Mendes' initial assessment of Rosa was that she has "diabetes, hypertension, hyperlipidemia, obesity, osteoarthritis, anxiety, and depression." Id. 372. By November 12, 2008, Rosa's hearing date, Dr. Mendes had not yet had the opportunity to follow-up with Rosa or collect Rosa's medical records, but on November 14, 2010, she again evaluated Rosa and filled out a RFC questionnaire, in which she indicated that Rosa suffered from osteoarthritis of the hips and sacroiliac joints and chronic lower extremity edema with pain, which rendered her unable to stand or walk for more than one hour during an eight-hour day. Id. at 374.

Treatment notes from Dr. Jose Monteiro ("Monteiro"), a primary care physician whom Rosa saw being in 2000, shows a finding of arthritis in Rosa's shoulders and rotator cuff syndrome in March 2004. Id. at 239. Monteiro submitted a report on behalf of Rosa to the SSA in January 2007.[4] Id. at 240, 243. He noted only that Rosa suffered from hypertension, hyperlipidemia, Gastroesophageal Reflux Disease ("GERD"), anxiety, and osteopenia. Id. at 244.

Another doctor, Dr. John Burke ("Burke"), submitted a report stating that Rosa suffered from anxiety-related disorders, but he noted that the disorders did not result in *severe* impairments. Id. at 246 (emphasis added). Dr. Burke also found that Rosa had a history of generalized anxiety disorders substantiated by medical findings. Id. at 251. Dr. Burke concluded that Rosa's anxiety resulted in mild limitations on her activities of daily living and

---

[4] He notes in the report that he did not have enough information to evaluate her psychiatric condition or diabetes. Id. at 240, 243.

social functioning, no limitations on her concentration, persistence of pace, and no episodes of extended decompensation. Id. at 256.

**2.      SSA Evaluation**

Dr. Beth Schaff, a physician who reviewed the evidence in the record for Disability Determination Services ("DDS"), notes in her report that the SSA obtained records only from Health First, a family health center, and indicates that these visits were related to the flu.[5] Id. at 262. Referring to these records, Dr. Schaff found complaints of "chronic myalgia," dizziness, and tremors, no mention of arthritis, and normal gait, grip strength, and neurological findings. Id. at 264. She also found Rosa's statements of function credible and limited by psychiatric factors. Id. Basing her conclusions on only the limited records from Health First, Dr. Schaff found that Rosa had an RFC that would allow her to occasionally lift twenty pounds; frequently lift ten pounds; stand or walk about six hours of an eight-hour workday, with normal breaks; sit for about six hours of an eight-hour work day, with normal breaks; and push or pull without limitation. Id. She found that Rosa was limited to occasional climbing, crouching, and similar postural actions. Id. at 265. She found no limitations in reaching or handling. Id. at 266. She noted that Rosa should avoid heights or hazardous machinery. Id. at 267.

The SSA obtained another RFC assessment from Dr. R. Titanji in December 2007. Id. at 299. Also based only on records from Health First from 2006 and 2007, Dr. Titanji determined that Rosa's diabetes was controlled by diet and did not cause severe impairment. Id. at 299. The doctor further found that the records revealed minimal, non-persistent edema with no medically determinable impairment; no objective evidence of arthritis; transient dizziness that did not

---

[5] It is troubling that Schaff was only given records from medical visits relating to the flu. The record does not provide an explanation for this action, but it is also not challenged by Rosa.

interfere with activities or create a medically determinable impairment; and high cholesterol controlled by medication that created no medically determinable impairment. Id. at 299.

C. **Procedural History**

Rosa applied for both Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") on December 15, 2006, alleging that she had been disabled since July 26, 2006. Id. at 107-113, 114-21. She raised several grounds for her claim, including: arthritis in her hands, fluid in her legs, diabetes, anxiety, dizziness, and high cholesterol. Id. at 145. After an initial evaluation, Commissioner Manuel Vaz of the SSA declared on June 12, 2007, that Rosa was not entitled to disability benefits. Id. at 42-43, 65-67, 68-70. On January 31, 2008, a Federal Reviewing Official upheld the SSA's determination. Id. at 44-51. In response, Rosa requested a hearing before an ALJ. Id. at 77-78. On November 12, 2008, ALJ Gerald Resnick ("ALJ Resnick") conducted a hearing during which Rosa, her daughter, and a Vocational Expert (VE) testified. Id. at 8-41. ALJ Resnick then issued an unfavorable decision denying Rosa all benefits on December 3, 2008. Id. at 52-64. The Decision Review Board selected Ms. Rosa's decision for review but failed to complete the evaluation within the allotted ninety days, rendering the ALJ's decision the final decision of the SSA Commissioner. A.R. at 1-3. This action is before the court pursuant to the Social Security Act, 42 U.S.C. § 405(g), which provides for judicial review of a final decision by the Commissioner of Social Security.

D. **The ALJ's Decision**

In his decision, ALJ Resnick employed the standard five-step evaluation process used to determine if an individual is disabled within the meaning of the Social Security Act.[6] 20 C.F.R.

---

[6] Before beginning the five-step process, he first determined that Rosa met the insured status requirements of the Social Security Act through December 1, 2010. A.R. at 57.

§ 416.920. All five steps are not applied to every applicant, as the determination may be concluded at any step along the process. Id. The steps are: 1) if the applicant is engaged in substantial gainful work activity, then the application is denied; 2) if the applicant does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, then the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the applicant's "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the applicant, given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted. Id.

At step one, ALJ Resnick found that Rosa had not been engaged in substantial gainful activity since July 2006. A.R. at 57. At step two, ALJ Resnick determined that Rosa had the following "severe" impairments: arthritis, obesity and situational depression/anxiety. Id. He also found that Rosa suffered from high cholesterol, leg edema, and diet-controlled diabetes. However, he asserted there was "no evidence of limitations on her ability" to perform basic work-related activities due to these additional medical problems. Id. at 57-58. At step three, ALJ Resnick concluded that Rosa's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. § 404. Id. at 58. Before beginning step four, ALJ Resnick determined Rosa's RFC, finding that she could perform "light work"[7] as defined by 20 C.F.R. §§ 404.1567(b), 416.967(b). To support this conclusion, ALJ Resnick asserted that Rosa could lift

---

[7] Light work is defined as work that involves 1) lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; and 2) a "good deal" of walking or standing, or, if the work involves sitting most of the time, some pushing and pulling of arm or leg controls. 20 C.F.R. §§ 404.1567(b); 416.967(b). A person capable of performing light work can also perform sedentary work, unless there are additional limiting facts such as loss of fine dexterity or inability to sit for long periods of time. Id.

twenty pounds occasionally and ten pounds frequently; sit for at least six hours of an eight-hour work day; perform occasional climbing, stooping, and kneeling; reach above shoulder level; and perform simple, routine, repetitive tasks on a sustained basis over an eight-hour work day. At step four, ALJ Resnick found that Rosa was capable of performing past relevant work as a pillow stuffer, examiner, and folder, noting that this work did not require the performance of work-related activities precluded by Rosa's RFC. A.R. at 64-65. Because ALJ Resnick concluded that Rosa could perform her past relevant work, he determined that Rosa was not disabled and thus did not move on to step five. Id.; see also Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).

### III. STANDARD OF REVIEW

Courts review administrative decisions for correct application of legal standards and to ensure that factual determinations are supported by substantial evidence. Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (citing 42 U.S.C. § 405(g); Sullivan v. Hudson, 490 U.S. 877, 885 (1989); Richardson v. Perales, 402 U.S. 389, 401 (1971)). A conclusion is based on substantial evidence when a reasonable person could deem the evidence adequate to support a conclusion. Richardson, 402 U.S. at 401 (citing Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence cannot be amassed by ignoring inconsistent evidence or making judgments reserved to experts. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). While substantial evidence may support a competing conclusion, the ALJ's conclusion stands as long as it is supported by substantial evidence. Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987). Courts typically understand deference to the factual conclusions of ALJs to preclude courts from providing a factual foundation or rationale for an ALJ's decision when the ALJ did not adequately specify it. See Coggon v.

Barnhart, 354 F. Supp. 2d 40, 59 (D. Mass. 2005); see also Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000) (requiring an ALJ to provide a "logical bridge" between the evidence and his conclusion).

## IV. LEGAL ANALYSIS

### A. Whether the ALJ Misapplied the Law When Refusing to Adopt the Treating Physicians' Opinions

Rosa asserts that ALJ Resnick improperly disregarded the medical opinions of her treating doctors in violation of 20 C.F.R. § 404.1527(d) and Social Security Ruling ("SSR") 96-2p. The governing regulations state that the SSA should "generally" give more weight to opinions from treating sources since they:

> are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. §§ 404.1527(d)(2). In fact, the SSA has declared that, if a treating source's opinion on the nature and severity of claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent" with the other substantial evidence, then it should be given *controlling* weight. Id. (emphasis added); see also Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 276 (1st Cir. 1988). Additionally, even if the treating source's opinion is not given *controlling* weight, it should be considering using a myriad of factors including: the examining relationship, treating relationship, length and frequency of examination/treatment, the nature and extent of the relationship, consistency of the opinion(s) with the record as a whole, specialization of the source, and any other relevant factors. 20

C.F.R. §§ 404.1527(d)(i) – (ii).  Moreover, an ALJ must give "good reasons" in his or her decision for the weight given to a treating source's opinion.  20 C.F.R. § 404.1527(d).

ALJ Resnick rejected the medical opinions of Drs. Rapoport and Mendes, two of Rosa's treating doctors.  ALJ Resnick found that he would not accord probative value to Dr. Rapoport's report dated April 18, 2008, because Dr. Rapoport did not indicate that Rosa suffered from intense pain in that report, which ALJ Resnick thought was necessary to support the determination that Rosa could not work full time.  Additionally, ALJ Resnick found that he would not accord Rapoport's report dated May 20, 2008, probative value because 1) the report was undated; 2) Rapoport's contemporaneously recorded treatment notes did not say that Rosa had reported difficulty with concentration or productivity due to pain; and 3) "other" unspecified records from Health First did not reach the same conclusion.  A.R. at 64.  Similarly, even though Rosa had transferred to Dr. Mendes so that she could finally speak with a doctor in her primary language, ALJ Resnick refused to accord Dr. Mendes' medical opinions any probative value because 1) Dr. Mendes had examined Rosa only once; 2) at the time of the appointment, Dr. Mendes did not have Rosa's medical records; and 3) Dr. Mendes did not prescribe Rosa pain medication.  Id. at 63.  As a result, ALJ Resnick found that Dr. Mendes had "no basis upon which to assess limitations in the claimant's ability to sit, stand or walk."  Id. at 62.  ALJ Resnick's reasons for dismissing Drs. Rapoport and Mendes were insufficient.

1. **Drs. Rapoport and Mendes**

A rheumatologist, Dr. Rapoport specializes in the relevant medical field, had ordered and studied Rosa's x-rays and other tests, and examined Rosa twice.  Dr. Rapoport's notes from April 17, 2008, which ALJ Resnick rejects, indicate that Rosa's pain had *intensified over the last two years*, that her cervical spine had a generalized decreased range of motion, that Rosa's hands

went numb at times, that there was "puffiness over" her hands, that there was decreased external rotation of her left hip, and that she suffered from discomfort in her lateral knee. A.R. at 322 (emphasis added). ALJ Resnick based his rejection of Dr. Rapoport's conclusion that Rosa suffered from too much pain to work on the fact that these April 17, 2008, notes do not indicate that Rosa suffered from intense pain. However, this conclusory assertion mischaracterizes what Dr. Rapoport wrote. Implied in Dr. Rapoport's comments that Rosa had decreased range of motion in her spine and suffered rotator cuff tendinitis and generalized osteoarthritis is the understanding that Rosa was in pain. Moreover, Dr. Rapoport did not rely simply on his in-person evaluation of Rosa. As a result of this appointment, he ordered and reviewed x-rays of her cervical spine, wrists, and pelvis, and sent her to physical therapy. As the radiological report explains, the x-rays conducted on April 19, 2008, showed moderate *degenerative* changes in Rosa's lower spine and moderate disc space narrowing. Id. at 323-25 (emphasis added).

Based on his evaluation of Rosa and the subsequent x-rays, Dr. Rapoport then filled out an SSA questionnaire on May 20, 2010, which ALJ Resnick also rejects. This report solicited from Dr. Rapoport his synopses of Rosa's ability to do work-related activities and Rosa's pain level. Id. at 332-34. In addition to indicating that Rosa could never carry anything over twenty pounds and could only occasionally carry twenty-pound objects, Dr. Rapoport declared that Rosa suffered from "significant pain" caused by osteoarthritis and rotator cuff tendinitis that had been confirmed by the x-rays. Id. at 334. He also noted that Rosa's pain was of "such severity as to preclude sustained concentration and productivity which would be needed for full time employment on an ongoing sustained basis." Id. ALJ Resnick asserted that he was disregarding this questionnaire since it was not signed and dated. In fact, on page two of what was identified as a three-page exhibit, Dr. Rapoport both signed and dated the questionnaire -- that Dr.

Rapoport did not repeat his signature on the third page is hardly sufficient to disregard the questionnaire in toto.

ALJ Resnick also improperly refused to accord the requisite weight to Dr. Mendes' report. Rosa began seeing Dr. Mendes on October 23, 2008, a few weeks before her hearing, because Rosa wanted a Portuguese-speaking doctor. Id. at 22. The importance of Rosa being able to see a doctor with whom she could speak her primary language should not be discounted. Dr. Mendes' initial assessment of Rosa was that she had "diabetes, hypertension, hyperlipidemia, obesity, osteoarthritis, anxiety, and depression." Id. at 372. By November 12, 2008, Rosa's hearing date, Dr. Mendes had not had the opportunity to follow-up with Rosa or collect Rosa's medical records,. ALJ Resnick relied upon these facts to dismiss Dr. Mendes' opinion. However, during the hearing, the ALJ invited Rosa to submit additional records from Mr. Mendes, which Rosa did. On November 14, 2010, Dr. Mendes again evaluated Rosa and filled out an RFC questionnaire, in which she indicated that Rosa suffered from osteoarthritis of the hips and sacroiliac joints and chronic lower extremity edema with pain, which rendered her unable to stand or walk for more than one hour during an eight-hour day. Id. at 374. While the ALJ found that Dr. Mendes had not prescribed pain medication as a basis for dismissing her conclusions, in a letter sent to ALJ Resnick on November 19, 2008, Rosa's attorney confirmed that Rosa had been taking Lodine for her pain. Id. at 190.

        2.        **Determination Improper**

ALJ Resnick instead elected to base his determination on the opinions of Drs. Schaff and Titanji, two non-treating physicians who reviewed the evidence in the abbreviated record for DDS and evaluated Rosa's records in response to her request for benefits. Id. at 263-70, 299. ALJ Resnick declared that Schaff and Titanji's opinions were "reasonable" and, therefore,

"adopted and incorporated" therein, without probing the bases for their determinations that Rosa could "stand and/or walk" about six hours in an eight-hour day and that Rosa's "minimal edema" caused "no medically determinable impairment" Id. at 63, 264, 299. I find ALJ Resnick's acceptation of these opinions, after easily rejecting the opinions of Rosa's actual treating doctors, troubling. An opinion from a doctor who actually treats a patient, sees her symptoms first hand, orders and review tests, and communicates with her in their native language certainly deserves to be given probative value in SSA determinations, at the very least, significantly more than was given here.

I therefore find that ALJ Resnick's dismissal of Dr. Rapoport and Dr. Mendes' evaluations and recommendations was unsupported by the record and violated 20 C.F.R. § 404.1527(d) and Social Security Ruling (SSR) 96-2p.

  **B.**  **Whether the ALJ Properly Supported His Credibility Determination**

Pain may serve as a separate and independent ground for disability. Gagnon v. Sec'y of Health and Human Services, 666 F.2d 662, 666 n. 8 (1st Cir. 1981). The ALJ determined that Rosa's statements concerning the intensity, persistence and limiting effects of her symptoms were not credible to the extent they were inconsistent with the RFC assessment. A.R. at 60. In response, Rosa argues that the ALJ improperly determined that her testimony regarding her subjective claims of pain could not "reasonably be expected to cause the alleged symptoms to the degree alleged." A.R. at 20.

Credibility determinations require two steps: First, the ALJ must conduct a proper inquiry into the claimant's symptoms of pain. Second, the ALJ must articulate specific and adequate reasons for determining that the testimony regarding the symptoms of pain is not

credible, or the record must be obvious as to the credibility finding.  Rohrberg v. Apfel, 26 F. Supp. 2d 303, 309 (D. Mass. 1998).

### 1. Pain

Pain may be a nonexertional factor to be considered in combination with exertional limitations, and it can also serve as a separate and independent ground for disability.  Gagnon, 666 F. 2d at 666 n. 8.  Therefore, the ALJ must consider all of a claimant's statements about her symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments that reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's Avery analysis and consider the following factors:

1. The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

2. Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

3. Type, dosage, effectiveness, and adverse side-effects of any pain medication;

4. Treatment, other than medication, for relief of pain;

5. Functional restrictions; and

6. The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986).  An individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

A review of the record reveals that the ALJ did conduct a proper inquiry into Rosa's subjective allegations of pain.  He asked her detailed questions about her symptoms, factors that

aggravated her pain, medications she was taking to control the pain, other treatments she has undergone to attempt to manage the pain, and her daily activities. A.R. at 11-22. The question, then, becomes whether the ALJ articulated specific and adequate reasons for deciding not to *credit* this testimony. See Rohrberg, 26 F. Supp. 2d at 309.

### 2. Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Id. at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. Furstaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987). An ALJ's determination as to a claimant's credibility regarding these matters is entitled to deference because it is the ALJ who observed the claimant, evaluated her demeanor, and considered how that testimony fit in with the rest of the evidence. Id. at 195.

Rosa testified that she cannot sit, stand, or walk for long because of leg pain. A.R. at 22. Rosa testified that she is unable to remember where she lives. Id. at 12. She also testified that she is taking English classes but "forgets everything." Id. at 13. While Rosa testified that she can sit for only ten minutes at a time because of pain and an inability to be in crowds, she also testified that her English classes are six hours a day and that she sits through them because she must. Id. at 19-20. Rosa testified that she lives alone, but that her daughter (who does not live with her) helps her dress and bathe because she cannot do it on her own. Id. Finally, Rosa

testified that she was laid off from her last job when the factory closed in 2006, that she collected unemployment,[8] and that she has not returned to work since. Id. at 18-19.

I find that ALJ Resnick did articulate adequate reasoning for deciding not to credit Rosa's allegations of pain.

        **C.**     **Whether the ALJ's RFC Assessment and Final Determination are Supported by Substantial Evidence in the Record**

The ALJ's RFC Assessment was based on testimony given at the hearing and medical records. The records relied upon, however, did not include those of Dr. Rapoport and Dr. Mendes. Id. at 59-63. Because I find this exclusion was in error, and because the excluded evidence provides a much more complete picture than that provided by the evidence the ALJ did consider, I also find that the ALJ's analysis supporting his RFC assessment and final decision was flawed.

## V.    CONCLUSION

The ALJ improperly discredited Drs. Rapoport and Mendes, and, in so doing, did not provide sufficient reasons for crediting the medical opinions supporting his findings and discrediting others, despite the presumptive weight that should be given treating and examining physicians.

For the foregoing reasons, the plaintiff's Motion for Order Reversing Decision (**document #20**) is **GRANTED**, and defendant's Motion for Order Affirming Decision of

---

[8] The ALJ indicated that Rosa's collecting of unemployment certified that she was ready, willing and able to work at the time she was laid off. A.R. at 60. Finding someone "not disabled" based *solely* on their collection of unemployment benefits is inappropriate; however, it seems here that while Rosa's collection of unemployment benefits may have been an element of ALJ Resnick's decision, it was not *the* deciding factor, or even a *major* deciding factor. See Perez v. Sec'y of Health, Educ. & Welfare, 622 F.2d 1, 3 (1st Cir. 1980) (holding that the consideration of the fact that claimant collected unemployment benefits while he was allegedly disabled was not a ground for reversal where there was other medical and vocational evidence supporting denial of benefits and claimant's receipt of unemployment benefits was not decisive factor in denial of benefits).

Commissioner (**document #22**) is **DENIED**. The decision of the ALJ is **VACATED**, and the case is **REMANDED** for further proceedings consistent with this opinion.

**SO ORDERED.**

Date:  **March 8, 2011**          */s/ Nancy Gertner*
                              **NANCY GERTNER, U.S.D.J.**